IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-cv-05548 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| CHOICE RECOVERY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Mr. David Morris, sued Choice Recovery, Inc. ("CRI") for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. Morris alleges that CRI failed to mark a debt he owed as disputed before reporting it to a credit agency, in violation of the FDCPA. For the reasons set forth below, Morris's motion for summary judgment as to liability is granted and CRI's motion for summary judgment is denied.

### BACKGROUND

On June 10, 2018, Morris's attorneys sent a fax to CRI, disputing an $82 debt purportedly incurred from a consumer medical account at Arlington Dermatology. Ex. C, ECF No. 1-1. The fax stated that "the debt reported on the credit report is not accurate." Joint Local Rule 56.1(a)(3) Statement of Material Facts ("SMF") ¶ 9, ECF No. 28. Three months earlier, on March 12, 2018, Arlington Dermatology had placed Morris's debt with CRI for collection. *Id.* ¶ 7. CRI is a licensed collection agency in Illinois. Def.'s Answer ¶ 8, ECF No. 10.

CRI's administrative team handles all incoming written disputes, including faxes. Def.'s Mem. in Support of its Mot. for Summ. J. ("MSJ") at 7-8, ECF No. 31. Members of the administrative team are instructed to forward all debt disputes and attorney documents to their Compliance Lead, Ms. China Morgan, who then logs disputes on an internal database. SMF ¶ 20,

ECF No. 28. In this case, an administrative team member transferred Morris's fax to Cameron Bamforth, a collector, rather than to Ms. Morgan. Ex. E at 34:2-4, 37:3-6, ECF No. 28-5. As a result, CRI failed to flag the debt as disputed. SMF ¶ 10, ECF No. 28. On July 10, 2018, CRI reported Morris's debt to Experian, a consumer credit reporting agency, without a dispute notation. *Id.* ¶¶ 12-13. Morris purchased his credit report from Experian later that month and discovered that his debt had not been marked as disputed. *Id.* ¶ 11. Between June and September 2018, CRI furnished information regarding Morris's debt to the credit reporting bureau on at least three occasions without the dispute notation. *Id.* ¶ 27.

On August 14, 2018, Morris filed suit against CRI for violating § 1692k(d) of the Fair Debt Collection Practices Act ("FDCPA"). ECF No. 1. Currently pending before the Court are the parties' cross-motions for summary judgment.

## DISCUSSION

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact "exists only if there is enough evidence upon which a reasonable jury could return a verdict in" the non-movant's favor. *Machiote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (internal quotation omitted). In reviewing cross-motions for summary judgment, the court "view[s] all facts and inferences in the light most favorable to the nonmoving party on each motion." *Wis. Alumni Research Found. v. Xenon Pharm., Inc.*, 591 F.3d 876, 882 (7th Cir. 2010).

The FDCPA protects consumers from false, deceptive, and misleading representations concerning debt collection. 15 U.S.C. § 1692e. Under the FDCPA, "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" constitutes a violation of the statute. *Id.* at (8). The parties agree that CRI communicated Morris's debt to

2

Experian without flagging that it was disputed. SMF ¶¶ 12-13, ECF No. 28. The parties also agree that Morris's fax legitimately communicated a dispute. Def.'s Mem. in Support of MSJ at 2 n.1, ECF No. 31. What remains in contention is whether CRI's failure to note the dispute is excusable under the bona fide error defense. 15 U.S.C. § 1692k(c). A debt collector may avoid liability under the bona fide error defense by proving[1] by a preponderance of the evidence that (1) the violation was unintentional, resulting from a "bona fide error," and (2) that error occurred "not-withstanding the maintenance of procedures reasonably adapted to avoid any such error." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995–96 (7th Cir. 2003) (internal quotation omitted).[2] Only mistakes of fact, not law, are subject to the bona fide error defense. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010).

CRI argues that any alleged violation of the FDCPA was unintentional. Def.'s Mem. in Support of MSJ at 5, ECF No. 31. According to CRI, an administrative team employee inadvertently sent Morris's dispute letter to a collector, rather than to the Compliance Lead. *Id.* at 6. The dispute thus went unflagged and was not communicated to Experian. CRI's assertion of

---

[1] Because bona fide error is an affirmative defense, the debt collector bears the burden of proving the elements of the defense.

[2] As Judge Bucklo noted in *Novak v. Monarch Recovery Mgmt.*, 235 F. Supp. 3d 1039, 1041 n.3 (N.D. Ill. 2016), "[i]n some cases, the Seventh Circuit has further broken down the two prongs articulated in *Turner* into three prongs, severing the question of the defendant's intent from the question of whether the violation resulted from a bona fide error. *See, e.g.*, *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997))." In *Kort,* the panel indicated that a bona fide error is one made in good faith. *Id.* at 538. If there is a distinction between unintentional errors and good faith errors, however, it is too subtle to matter in this case, where the mistake is akin to those that have been held to be both unintentional and bona fide.

unintentionality aligns with Seventh Circuit case law, which provides that a debt collector "need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Abdollahzadeh v. Mandarich Law Group, LLP*, 922 F.3d 810, 815 (7th Cir. 2019) (internal quotation omitted). CRI may have intentionally communicated Morris's debt to Experian, but nothing suggests that its employees intended to violate the FDCPA in doing so. No reasonable juror could conclude on this record that CRI's error was anything other than an unintentional, bona fide, error. Garden-variety mistakes of fact or clerical errors include losing a dispute letter before opening it, inadvertently failing to read the language disputing the debt, or marking the dispute with the incorrect numerical code in a database. *See Evans v. Portfolio Recovery Associates, LLC*, 889 F.3d 337, 350 (7th Cir. 2018); *Washington v. Convergent Outsourcing, Inc.*, No. 15 C 7043, 2017 WL 1093152, at *4 (N.D. Ill. Mar. 23, 2017).[3] Misdirecting a fax communicating a debt dispute fits neatly into this class of isolated administrative errors that qualify for the bona fide error defense.

On the second prong of the defense, however, CRI fails. Section 1692k(c) excuses not all unintentional bona fide errors but only those that occurred despite the debt collector's "maintenance of procedures reasonably adapted to avoid" such errors. The FDCPA "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539. Procedures in the FDCPA context are defined as "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *Jerman*,

---

[3] Mistakes of law, by contrast, involve legal interpretation and do not fall within the ambit of the bona fide error defense. *Jerman*, 558 U.S. at 587. In *Evans*, for example, the Seventh Circuit found that a debt collector who read and disregarded a dispute letter, finding it invalid and ambiguous, committed an error of law. 889 F.3d at 347. There, the collector imposed his interpretation of the letter in declining to flag it as disputed. That is not the case here. CRI acknowledges that the fax presented a valid dispute and is distinguishable from *Evans* in that regard. Def.'s Mem. in Opp'n to Pl.'s MSJ at 2-3, ECF No. 33.

559 U.S. at 587. Evaluating a debt collector's procedures involves two steps: first, determining whether the debt collector maintains procedures to prevent errors; and, second, whether those procedures are reasonably adapted to prevent the error at issue. *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006).

The error at issue here was the misrouting of a debt dispute communication to a collector rather than to the Compliance Lead—the individual responsible for properly processing the debt dispute. And turning to the first step in the assessment of the adequacy of CRI's efforts to avoid errors, it cannot be said that CRI maintains **no** procedures to ensure that all disputed debts were properly reported. CRI's process for handling written disputes, including those received via fax, begins with its administrative team. Administrative team members receive written disputes and must then send them directly to the Compliance Lead, Ms. China Morgan. Ex. G, ECF No. 28-7. Once Ms. Morgan receives the dispute, she updates the account record with one of three codes to either remove credit reporting, suppress future credit reporting, or update the credit reporting with a dispute notation. Def.'s Mem. in Support of MSJ at 3, ECF No. 31. Administrative team members must also forward all attorney communications to Ms. Morgan, without exception. Ex. E at 13:7-12, ECF No. 28-5.

Additionally, all CRI employees complete one week of FDCPA training at the beginning of their employment. Def.'s Mem. in Support of MSJ at 3, ECF No. 31. CRI administers an annual FDCPA test that employees must pass with a score of at least 95%. Ex. E at 10:16-18, ECF No. 28-5. CRI provides five training questions to employees four days a week to prepare for the annual exam. *Id.* at 9:22-24. Members of the administrative team, who handle all incoming written disputes, also receive annual trainings on their training manual. *Id.* at 38:13-16. Following the incident at issue in this case, CRI increased the administrative team's trainings to quarterly

sessions. *Id.* CRI thus has a process in place to train its employees to recognize written disputes and to funnel them through the proper channels. Training staff on the procedures for properly processing and reporting debt disputes is certainly a means for reducing errors.

CRI's procedures, however, were not reasonably adapted to prevent the specific error in question, namely flagging disputes that were sent to an employee other than the Compliance Lead. It is not enough to train employees how communications disputing debts ***should*** be handled and processed; procedures must be in place to provide reasonable assurance that errors and deviations from the prescribed procedures will be detected and remedied. CRI's procedure for ensuring that disputed debts were properly noted was simply to expect that its employees would always route the notice of the dispute properly within the organization. When administrative team members receive disputes via fax, they record them in an email log separate from CRI's normal system of record, but CRI adduced no evidence as to the information entered into the log or to show that the log was ever reviewed. *Id.* at 21:5-11, 35:5-7. When asked whether the log would have shown the name of the administrative team member who received the dispute, CRI's Compliance Lead replied, "[The disputed fax] should have just gone to me." *Id.* at 37:3-6. That sort of reliance on unerring routing of disputed debt communications does not constitute a procedure reasonably adapted to avoid the misrouting of debt dispute communications. *See*, *e.g.*, *Carrigan v. Cent. Adjustment Bureau, Inc.*, 494 F. Supp. 824, 827 (N.D. Ga. 1980) (rejecting bona fide error defense in absence of procedure to ensure proper routing other than that "it was just understood" that employees would "go to the Post Office, pick up the mail, bring it back, sort it, pass it out to the appropriate collector").

CRI has not shown that it engaged in any real-time monitoring to ensure that the misrouting of communications disputing debts was detected in a timely manner or that it had any process for

6

rerouting a misdirected communication disputing a debt if someone did detect a problem.[4] Nor did CRI present any evidence identifying any quality control procedures to check the administrative team's work and ensure that they were properly transferring disputes to the Compliance Lead. CRI points to no evidence to show that it had any means to assess whether employees were carefully reviewing incoming communications or whether they carelessly skimmed them. It adduced no evidence of any process it employed to resolve ambiguities in communications if they did not make clear whether the debt was being disputed.

These are the kinds of procedures that might have given CRI an argument that its procedures were reasonably adapted to prevent it from failing to report debt disputes. In *Flores v. Portfolio Recovery Associates, LLC*, No. 15 C 02443, 2017 WL 5891032 (N.D. Ill. Nov. 29, 2017), for example, the district court rejected the defendant's bona fide error defense premised on "careless reading" by the employee who failed to note that the communication at issue disputed a debt, noting that the debt collector had no procedures in place to prevent that type of error. *Id.* at *6. *See also, e.g.*, *Baranowski v. Portfolio Recovery Associates, LLC*, No. 15 C 2939, 2018 WL 1534967, at *5 (N.D. Ill. Mar. 29, 2018) (citing absence of evidence that debt collector trained departments other than the dispute department about what to do with misrouted communications disputing debts). Preventive procedures do not, of course, have to guarantee that no errors will occur—there would be no need for a bona fide error defense, were that the requirement—and even simple steps such as maintaining ***and reviewing*** a comprehensive log, see *Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 1000 (D. Az. 2010) (debt collector could have easily maintained and reviewed a mail log to track whether incoming communications were handled

---

[4] Indeed, CRI reported the debt as undisputed three times over about three months, once even after Morris had filed this lawsuit.

properly upon receipt), or requiring spot checks by other employees or supervisors, *Flores,* 2017 WL 5891032 at *6, might suffice.

But, CRI had no such procedures to avoid the risk of simple human errors in the distribution of disputed debt communications; it employed no "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *Jerman*, 559 U.S. at 587. Accordingly, no reasonable jury could conclude that CRI has proven its bona fide error defense by a preponderance of the evidence; a system that relies on human infallibility is not, as a matter of law, reasonably adapted to prevent human error. CRI's bona fide error defense therefore fails as a matter of law and Morris is entitled to summary judgment as to CRI's liability under the FDCPA.

*   *   *   *   *

Mr. Morris's motion for summary judgment is therefore granted, and CRI's motion for summary judgment is, accordingly, denied. The issue of damages remains, and the Seventh Circuit has held that § 1692k(a)(2) of the FDCPA allows for a jury trial to determine statutory damages. *Kobs v. Arrow Service Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998). Consequently, the issue of damages will advance to trial, but the parties are directed to confer regarding settlement in advance of a status hearing that will be held on November 19, 2020 at 9:00 a.m.

Dated: October 30, 2020

John J. Tharp, Jr.
United States District Judge

8